UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

v.

DOLORES FISCHER,

    Defendant.

Case No. 20-12241
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18] AND
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14]

Dolores Fischer and her husband were driving back to Ohio after visiting their son in Michigan when they got into an accident with Robert Bussell, who was riding a moped. Bussell had to get a hip replacement and other treatment following the crash. Because Bussell did not have no-fault insurance, his personal injury claim was assigned to Allstate Insurance Company under the Michigan Assigned Claims Plan. Allstate paid for Bussell's medical expenses following the accident.

Believing that Fischer crossed into Bussell's lane when the accident occurred, Allstate sued Fischer for negligence and reimbursement of the amount it paid for Bussell's personal injury claim. Fischer contends that Bussell is the one who crossed into her lane. Both parties feel they are entitled to summary judgment on this issue and have so moved. Having thoroughly reviewed the summary-judgment record, the Court will GRANT Fischer's motion for summary judgment and DENY Allstate's motion for the reasons set out below.

I.

A.

Dolores Fischer and her husband, Robert Fischer, are Ohio residents who occasionally visit their son in Clarkston, Michigan. (*See* ECF No. 14-6, PageID.155.)

On June 24, 2017, Fischer, who is 88 years old, and her 85-year-old husband were driving home from Michigan to Ohio in their Mercedes SUV. (*Id.* at PageID.147.) Fischer was driving and her husband was in the passenger seat. (*Id.* at PageID.147–148.) As they approached Dearborn, there was a detour requiring Fischer to exit onto Schaefer Road. (*Id.* at PageID.148–149.)

As they were driving south on Schaefer Road, Fischer approached the stoplight at the intersection of Schaefer and Butler and saw 72-year-old Robert Bussell on his moped waiting at the stoplight. (*Id.*) The light was red as Fischer approached it but turned green before she fully stopped. (*Id.*) Bussell was in the right-hand lane next to the Fischers. (*Id.*)

Shortly after both parties crossed the intersection, the right-side of Fischer's SUV and the left handle of Bussell's moped collided. (ECF No. 14-7, PageID.167; ECF No. 14-5, PageID.129.) The collision caused Bussell to lose control of the moped and crash. (*See* ECF No.14-6, PageID.150.) Bussell landed in the left lane, where the Fischers had been driving. (*See* ECF No. 18-6, PageID.324.) Bussell was taken to the hospital after the accident and had hip replacement surgery during his stay. (ECF No. 14-5, PageID.130, 132.) He also had a fractured vertebrae and increased lower back pain after the crash. (*Id.* at PageID.124.)

2

The Fischers state that Bussell swerved into their lane (the left lane) to avoid uneven road, which caused the crash. (ECF No. 14-6, PageID.151; ECF No. 14-7, PageID.167.) Pictures of the accident scene from the police dash cam and from Google Maps at the time show a pothole in the right lane. (ECF No. 18-6, PageID.325–326.) Bussell testified, however, that there was not a pothole in his lane, and he did not swerve out of his lane. (ECF No. 14-5, PageID.129.)

After Bussell lost control and fell in the left lane, Fischer's husband told her that the moped had hit their car, so Fischer pulled over into the right lane to stop. (ECF NO. 14-6, PageID.150.) Fischer parked the car and went back to where Bussell had crashed. (*Id.*) Fischer's husband backed up their SUV to where the crash occurred. (*Id.*)

Though the record does not state who called the police or how long it took for them to arrive, Corporal Brenton King and Corporal Patrick Spresser arrived at the scene of the accident. (ECF No. 18-2, PageID.210.) King spoke to Fischer, her husband, Bussell, and Phillip Peetz, a witness to the accident. (*Id.* at PageID.212–213.) King also made a police report, recounting what he was told. (*See* ECF No. 18-3.) King testified that he believed Bussell had swerved into the Fischers' lane and hit their vehicle. (ECF No. 18-2, PageID.213.) He did not issue anyone a citation for the accident. (*Id.* at PageID.222.)

Bussell did not have no-fault insurance on the date of the accident (ECF No. 14-5, PageID.135), and applied for personal injury benefits with the Michigan

Assigned Claims Plan (MACP) (*See id.* at PageID.126).[1] The claim was assigned to Allstate and Allstate paid $341,946.10 in benefits for Bussell's treatment. (ECF No. 14-3, PageID.114.)

B.

Michigan law provides that an insurer assigned a claim under the assigned claims plan, such as Allstate in this case, may sue a third-party for reimbursement and indemnification of the assigned claim on behalf of the Michigan automobile insurance placement facility. Mich. Comp. Laws § 500.3175(2). Thus, Allstate sued Fischer for reimbursement of the amount it paid for Bussell's injuries, arguing that Fischer was responsible under a general theory of negligence (Count I). (ECF No. 1, PageID.4–5.)

Allstate also requested a declaratory judgment stating that Fischer was obligated to maintain no-fault insurance under the Michigan No-Fault Act (Count II). (*Id.* at PageID.6.) But Allstate has since switched positions and contends that Fischer is not covered by Michigan's No-Fault Act. (*See* ECF No. 14, PageID.89.) Fischer agrees that she was not required to maintain no-fault coverage. (ECF No. 14-2, PageID.98–99.) So Count II is no longer at issue and is accordingly dismissed.

---

[1] Neither party provided a record citation in support of showing that Bussell applied for first-party benefits via the MACP. In Bussell's deposition, an exhibit that is purportedly Bussell's application for personal injury protection benefits was presented, but that exhibit was not provided to the Court. Further, Bussell denied the handwriting on the application was his, though he testified that the signature was his. (ECF No. 14-5, PageID.126.) But since neither party contests this fact, the Court assumes it is true for purposes of this motion.

4

Following discovery, Allstate filed a motion for summary judgment. (ECF No. 14.) Fischer then filed a response stating that her upcoming motion for summary judgment would also serve as a response to Allstate's motion. (ECF No. 17.) Fischer then filed a motion for summary judgment. (ECF No. 18.) Apart from its initial motion for summary judgment, Allstate has not responded to Fischer's motion or replied to its own motion.

Both motions are now before the Court. Given the clear briefing and record, the Court considers both motions without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessarily the case that either party is entitled to summary judgment. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering Allstate's motion, the evidence is viewed in the light most favorable to Fischer and the initial (and ultimate) burden is on Allstate to show that it is entitled to judgment as a matter of law. *See id.* The opposite is true when considering Fischer's motion. *See id.*

## III.

It is well-established under Michigan law that a negligent defendant is "liable for all injuries resulting directly from his or her wrongful act, whether foreseeable or

not, if the damages were the legal and natural consequences of the defendant's conduct and might reasonably have been anticipated." *State Auto Ins. Cos. v. Velzquez*, 703 N.W.2d 223, 226 (Mich. Ct. App. 2005). A third-party may be liable to an assigned insurer for the payment of benefits to the injured party even if the third-party is not subject to the Michigan No-Fault Act. *Id.* So even though Fischer is not covered by the Michigan No-Fault Act, she still may be liable for reimbursement if her negligence caused Bussell's injuries.

Thus, the parties agree that the only issue remaining in this case is whether Fischer acted negligently. If so, Fischer must reimburse Allstate for the benefits Allstate provided to Bussell, which include "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." *See* Mich. Comp. Laws § 500.3107(1)(a). After reviewing the record, the Court finds that no reasonable jury could find that Fischer acted negligently.

A.

As an initial matter, the Court notes that Fischer's motion for summary judgment is unopposed. Allstate did not provide any response to Fischer's motion, and therefore, there is nothing to counter many of Fischer's arguments. In contrast, Fischer responded to Allstate's motion for summary judgment by explicitly stating that her own motion for summary judgment would serve as a response. So all that is before the Court are each party's motion for summary judgment. However, since the Court will address Allstate's arguments in support of its motion for summary

6

judgment in this opinion, it will treat these arguments as a response to Fischer's motion to the extent they address the same issue.

B.

The parties dispute whether Fischer or Bussell improperly entered the other's lane, causing their vehicles to collide. Neither party disputes that swerving into another's lane is negligent.

Fischer provides a compelling case that she did not swerve and that Bussell was the one who entered her lane. Fischer's husband testified that from the passenger seat, he saw Bussell come into Fischer's lane to avoid a pothole in the right lane. (ECF No. 14-7, PageID.167.) Google Maps images from 2017 and police dash cam footage corroborate that the road was uneven in the right lane in the area where the accident happened. (ECF No. 18-6, PageID.325–326.) Though Fischer did not see Bussell enter her lane, she testified that she stayed in her lane until after Bussell's moped hit the side of her car. (ECF No. 14-6, PageID.155.) And Corporal King testified that he concluded Bussell had improperly changed lanes, not Fischer. (ECF No. 18-2, PageID.215.)[2] Thus, the Fischers' and King's testimony support finding that Bussell entered the left lane.

---

[2] King's police report also states that Bussell "swerved to avoid a bump in the road and struck the passenger side" of Fischer's vehicle. (ECF No. 18-3, PageID.237.) A court may not consider hearsay when deciding a summary judgment motion unless such evidence would be admissible at trial. *See Tranter v. Orrick*, 460 F. App'x 513, 514 (6th Cir. 2012). Neither party has argued for or against concluding that the police report is hearsay. But since the report contains no factual findings, other than witness statements that are hearsay, it is likely hearsay. *See Tranter*, 460 F. App'x at 515 (affirming exclusion of an investigation report because it did not contain

Fischer also provides a report from Larry Petersen, a consulting automotive engineer, who reconstructed the accident scene. (*See* ECF No. 18-6.) Petersen has reconstructed accidents and provided conclusions in a number of cases. (ECF No. 18-8, PageID.346–354.) Allstate does not argue that Petersen's report should be excluded from consideration during summary judgment.

Consistent with the Fischers' account and King's conclusion, Petersen determined that Bussell entered Fischer's lane. Petersen relies on dash cam footage following the accident, which shows that Bussell and his moped landed in the left lane (Fischer's lane) after the crash. (ECF No. 18-6, PageID.324.) Petersen concludes that Bussell would not have landed in the left lane if Fischer had swerved into the right lane. (*Id.* at PageID.329.) Petersen explains that if Fischer's car had swerved right and hit Bussell, the motion would have "forced the scooter and Mr. Bussell either full out of the right travel lane or over to the right edge of the right lane." *Id.* Allstate provides no alternative explanation for why Bussell landed in the left lane after the collision. So Petersen's analysis also supports finding that Bussell entered Fischer's lane, causing the collision.

Allstate highlights three pieces of evidence that it argues show Fischer entered Bussell's lane and caused him to lose control of his moped. But these arguments would not lead any reasonable jury to find that Fischer was negligent.

---

factual findings as required by Fed. R. Evid. 803(8)). So the Court will not rely on the police report in analyzing whether Fischer was negligent.

Allstate contends that Fischer testified that she "failed to watch Bussell as she passed him on the road" and was "so unaware of the existence of other vehicles in her vicinity that she did not realize she struck an individual." (ECF No. 14, PageID.90–91.) But even if Fischer did not watch Bussell as she passed through the intersection, that does not lead to the reasonable inference that she entered his lane. Fischer testified that she saw Bussell as she approached the light. (ECF No. 14-6, PageID.149.) And Fischer testified that she was not watching Bussell because she "was looking at the road straight ahead of me," which would support a finding that Fischer did not enter another lane because she was focused on the road. (ECF No. 14-6, PageID.149.) And Fischer's lack of awareness immediately after the collision also does not prove her negligence. Fischer testified that "All I heard was a sound when it hit" and that she "didn't know what the sound was." (*Id.* at PageID.150.) But this testimony does not show that Fischer must have hit Bussell. Instead, it makes sense given that the collision occurred with the side of Fischer's vehicle, and Fischer testified that she was focused on the road ahead of her. And Fischer's testimony could also reasonably suggest that because she did not know what the sound was, Bussell ran into her. So Fischer's testimony does not support Allstate's argument that she entered Bussell's lane.

Allstate also relies on statements from Phillip Peetz, a witness to the accident, in support of showing that Fischer entered Bussell's lane. As Fisher points out, Allstate did not provide sworn testimony from Peetz in the form of a deposition, declaration, or affidavit. Instead, Peetz's statements are taken from a transcript of a

9

recorded interview that Fischer's insurance company conducted. (ECF No. 18-9, PageID.356.) Fischer argues that evidence from Peetz is in the form of unsworn statements and is inadmissible hearsay. The Court agrees. *See Worthy v. Michigan Bell Telephone Co.*, 472 F. App'x 342, 344 (6th Cir. 2012) (citing *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *M.J. by and through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 446 (6th Cir. 2021) (holding that a district court did not err when ignoring police interview transcripts on hearsay grounds). True, deposition testimony also takes the form of hearsay, but it is appropriate to consider at summary judgment. But the reasoning behind this rule is that deposition testimony is likely to take an admissible form at trial when the witness takes the stand. *See Tranter*, 460 F. App'x at 515. Here, there is no indication that either party will call Peetz as a witness since neither party chose to depose him, and Peetz could not be impeached with his former statements as they were not taken under oath. *See* Fed. R. Evid. 801(d)(1)(A) (a prior inconsistent statement given under penalty of perjury or in a deposition is not hearsay). Allstate also does not provide any response to Fischer's argument that Peetz's statements are hearsay. Thus, the Court will not consider Peetz's statements here.

Even if Peetz's statements are not hearsay, however, they are of little help to Allstate. Peetz states that Fischer "sideswiped" Bussell as they were going through the light. (ECF No. 18-9, PageID.357.) But Peetz misidentifies Fischer's car (stating it was a Ford Escape), the direction Fischer was traveling in (stating she was going East), and Fischer's position in relation to Bussell (stating she was on his right). (*Id.*

10

at PageID.357.) The damage to the car and Fischer and her husband's testimony show that Fischer was on the left-side of Bussell. (ECF No. 18-6, PageID.330; ECF No. 14-6, PageID.155; ECF No. 14-7, PageID.167.) And it is undisputed that Schaefer Road, where the accident occurred, runs North-South and Fischer was driving a Mercedes, not a Ford. (*See* ECF No. 14, PageID.76; ECF No. 14-6, PageID.147; ECF No. 18-6, PageID.323.) And though Peetz's inconsistencies with the bulk of the evidence is not a reason to find for Fischer, it is a reason in support of denying Allstate's motion for summary judgment. *See Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) ("[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses.").

That just leaves Bussell's testimony in support of Allstate's argument that Fischer improperly swerved into Bussell's lane. Bussell's testimony alone, however, is insufficient to create a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ("The mere existence of a scintilla of evidence in support of a [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]."). And even if a jury were to credit Bussell's testimony, he only states that he did not swerve out of his lane. (ECF No. 14-5, PageID.129.) He does not testify that Fischer enter his lane. Indeed, Bussell states that he did not see Fischer's car until after impact. (ECF No. 14-5, PageID.134.) So Bussell's testimony also does not affirmatively prove that Fischer acted negligently.

11

Bussell also testified that he did not know what happened other than "I felt the hit" and "seen the car go by[.]" (ECF No. 14-5, PageID.134.) Bussell had to ask another person who pulled up to the scene (presumably Peetz) what happened. (*Id.*) Bussell further testified there was no pothole or obstruction in the road, contrary to the images of the road at the time. (*Id.* at PageID.129.) His testimony is not sufficient to create a genuine dispute of fact as it is the only piece of evidence Allstate has in support of its negligence argument, and contains "patent weaknesses and contradictions[.]" *See Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (affirming district court's grant of summary judgment because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment" (quoting *Scott v. Harris*, 550 U.S. 273, 380 (2007))).

In sum, Fischer has provided sufficient evidence that she did not enter Bussell's lane. Fischer cites her, her husband's, and King's testimony, as well as Petersen's conclusions after reviewing the accident reports, images of the accident site, and reconstructing the scene. Therefore, Fischer has provided sufficient evidence to show that every reasonable jury would find she was not negligent and did not cause Bussell's injuries from the accident. Allstate has not responded to many of Fischer's arguments. And it only provides Peetz's unsworn statements and Bussell's testimony that he did not swerve to show Fischer was negligent. So no reasonable jury could find that Fischer's negligence caused Bussell's injuries.

12

IV.

Therefore, Fischer's motion for summary judgment is GRANTED and Allstate's motion for summary judgment is DENIED. The case is dismissed.

SO ORDERED.

Dated: October 28, 2021

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE